UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY DOXTATER,

        Plaintiff,

v.

SEARAY PORTFOLIO MANAGEMENT, INC.;
AUDUBON  HOLDINGS GROUP INC.; DAVID
JOHN  DWYER, JR.; KATELYN C. STUMPF;
WALKER, WILLIAMS & ASSOCIATES, LLC;
RESOLUTION PERFORMANCE GROUP INC.;
TRISTAN M. POTTER; NCW BILLING INC.;
NATIONAL CREDIT WORKS, INC; NATIONAL
CREDIT WORKS II LLC; GREGORY GEORGE
EMMINGER and DOUGLAS J. MACKINNON;

        Defendants.

_____/

COMPLAINT

**I.**    **Introduction**

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection

Practices Act ("MCPA"), M.C.L.§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC")

M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities to be identified in discovery, are involved in

a fraudulent, criminal and ongoing scheme whereby they extort the payment of money from

consumers across the country who allegedly have failed to repay payday loans.  Defendants as

well as many other entities located in and around Buffalo, New York are involved in ongoing

1

criminal schemes to collect delinquent payday loans through the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following: The caller calls from a blocked number or uses a spoofed telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "defrauding a financial institution" and otherwise represents that the consumer has committed a crime, threatens the consumer with incarceration, and suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). When the consumer responds to the call, the collector (sometimes posing as an attorney) accuses the consumer of having committed a crime, makes false threats of pending litigation and prosecution, and demands payment of the alleged debt. Often times, the consumer's account will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.

3.     The use of these unlawful debt collection practices by defendants and other debt collectors is epidemic in the Buffalo, New York metropolitan area, as described in the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.

## II.     Jurisdiction

4.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.    Parties**

5.    Plaintiff Judy Doxtater is a natural person residing in Kent County, Michigan. Mrs. Doxtater is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mrs. Doxtater is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

6.    Defendant Searay Portfolio Management, Inc. ("Searay") is a New York corporation. The registered agent for Searay is David Dwyer, 3875 Fritz Road, North Tonawanda, New York 14120. According to the Searay internet website (www.searaypm.com), Searay does business from a strip mall located at 462 Evans Road, Williamsville, New York 14221. However, according to the owner of the property, Searay vacated the premises more than one year ago. Upon information and belief, Seaway now operates from office space located at 90 Sylvan Parkway, Amherst, New York 14228. According to the Searay internet website, "Searay Portfolio Management is a debt recovery and payment management company dedicated to helping consumers resolve debts with their creditors." Seaway uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Seaway regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Seaway is a "debt collector" as the term is defined and used in the FDCPA. Seaway is a "regulated person" as the term is defined and used in MCPA. Alternatively, Seaway is a "collection agency" and "licensee" as the terms are defined and used in MOC.

7.    During all times pertinent hereto, Seaway directly and indirectly participated in

the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

8.      Defendant Audubon Holdings Group Inc. ("Audubon"), FEIN 46-384xxxx, is a New York corporation, purportedly operating from office space located at 90 Sylvan Parkway, Amherst, New York 14228.  The Audubon internet website (www.audubonholdings.com) states: "As a true collection agency we have first hand experience in actual debt recovery . . . ." Audubon has filed documents to become qualified to do business as a debt collector in  various states, including Alabama, California, Florida, Kansas, South Dakota, Texas and West Virginia. Audubon uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Audubon regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Audubon is a "debt collector" as the term is defined and used in the FDCPA.  Audubon is a "regulated person" as the term is defined and used in MCPA.  Alternatively, Audubon is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.      During all times pertinent hereto, Audubon directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

10.     The Audubon internet website was created on March 5, 2014, naming as the registrant, a person named Megan Vandeviver, with a registrant street address of 501 John James Audubon Parkway, Amherst, New York 14228.  Other entities operating from that same address include Northern Resolution Group, LLC, a Delaware limited liability company, Enhanced Acquisitions LLC, a New York limited liability company and Elite Payment Solutions LLC, a New York limited liability.  The Audubon internet website "contact" page lists the Audubon

address as 90 John James Audubon Parkway, Amherst, New York 14228.

11.     Defendant David John Dwyer, Jr. is approximately 36 years of age and purportedly resides at 3875 Fritz Road, North Tonawanda, New York 14120. Mr. Dwyer is an owner, officer, manager and employee of Searay. Mr. Dwyer is an owner, officer, manager and employee of Audubon. Mr. Dwyer was formerly an owner, officer, manager and employee of various debt collection agencies, including Southern Capital Associates, Inc., National Recovery Group LLC and Lockport Collections Inc. Mr. Dwyer uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Dwyer regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Dwyer is a "debt collector" as the term is defined and used in the FDCPA. Mr. Dwyer is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Mr. Dwyer is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

12.     During all times pertinent hereto, Mr. Dwyer (a) created the collection policies and procedures used by Searay and Audubon and/or their employees and agents, (b) managed the daily collection operations of Searay and Audubon, (c) oversaw the application of the collection policies and procedures used by Searay and Audubon and/or their employees and agents, (d) ratified the unlawful debt collection policies and procedures used by Searay and Audubon and/or their employees and agents, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by Searay and Audubon and/or their employees and agents in connection with their efforts to collect an alleged debt from Mrs. Doxtater and others using the unlawful debt collection practices that are described in this complaint.

13.     During all times pertinent hereto, Mr. Dwyer directly and indirectly participated in

5

the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

14.     Defendant Katelyn C. Stumpf is approximately 26 years of age and purportedly resides at 528 Homecrest Drive, Buffalo, New York 14120.  When collecting debts, Ms. Stumpf sometimes uses the alias, "Ruth Herrington."  Ms. Stumpf is an owner, officer, manager and/or employee of Searay.  Ms. Stumpf is an owner, officer, manager and/or employee of Audubon. Ms. Stumpf has an email address of kstumpf@searaypm.com.  Ms. Stumpf maintains a cellular telephone number, 716-531-2122.  Calls made to that number are returned by Ms. Stumpf, stating that her name is Ruth Herrington and that she is calling on behalf of Audubon and/or Searay.  Ms. Stumpf uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Ms. Stumpf regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Ms. Stumpf is a "debt collector" as the term is defined and used in the FDCPA.  Ms. Stumpf is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Ms. Stumpf is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

15.     During all times pertinent hereto, Ms. Stumpf directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

16.     On March 31, 2014, Audubon filed a document with the West Virginia Secretary of State, identifying Mr. Dwyer has the President and Owner of Audubon, and providing a mailing address for Audubon of 13046 Racetrack Road, Suite 105, Tampa, Florida 33625, which is merely a private mail box located at UPS Store #5672, which is shared by various debt

collectors named Debt Management LLC, Debt Management Group of Tampa LLC and Pipeline Debt Consulting LLC, and their owners and operators named Bradly W. Spoor and Kristen M. Spoor.

17.     Searay and Audubon, use, and sometimes share, the following telephone numbers: 716-204-8910 (fax), 716-262-4894, 716-362-0351, 716-362-4894, 716-641-6118, 716-650-2640, 716-650-5211, 855-245-1633, 855-245-1635, 855-474-1127, 855-491-6167, 855-544-1383, 877-252-0550 and 877-761-5170.

18.     Defendant Walker, Williams & Associates, LLC ("WWA") is a New York limited liability company, registered March 4, 2014, and purportedly operating from office space located at 90 Sylvan Parkway, Amherst, New York 14228.  The registered agent for WWA is Tristan Potter, 3840 East Robinson Road, #259, Amherst, New York 14228, which is merely a private mailbox maintained at The UPS Store, No. 0767.  WWA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  WWA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  WWA is a "debt collector" as the term is defined and used in the FDCPA.  WWA is a "regulated person" as the term is defined and used in MCPA.  Alternatively, WWA is a "collection agency" and "licensee" as the terms are defined and used in MOC.

19.     During all times pertinent hereto, WWA directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

20.     Defendant Resolution Performance Group Inc. ("RPG") is a New York corporation, incorporated by attorney Rodney A. Giove in September of 2011.  RPG uses

interstate commerce and the mails in a business the principal purpose of which is the collection of debts. RPG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. RPG is a "debt collector" as the term is defined and used in the FDCPA. RPG is a "regulated person" as the term is defined and used in MCPA. Alternatively, RPG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

21.     During all times pertinent hereto, RPG directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

22.     Defendant Tristan M. Potter is approximately 25 years of age and resides with his mother in an apartment located at 3B Embassy Square, Apt. 6 (or possibly Apt. A3), Tonawanda, New York 14150. Mr. Potter touts on his Facebook page ,

(https://www.facebook.com/tristan.potter.18?fref=ts&ref=br_tf that when he is not busy being the "Cafe/Lead Server/Bartender/Waiter at Banchetti by Rizzo," he is the "Director of Operations" at defendant Resolution Performance Group Inc. By every appearance, Mr. Potter has neither the financial resources nor the ability to direct any business, and is more likely (at best) a sacrificial figurehead for the true leadership of the corporate defendants named in this lawsuit. Mr. Potter uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Potter regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Potter is a "debt collector" as the term is defined and used in the FDCPA. Mr. Potter is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Mr. Potter is a "collection agency" and

"licensee" as the terms are defined and used in the MOC.

23.     During all times pertinent hereto, Mr. Potter (a) created the collection policies

and procedures used by Searay and Audubon and/or their employees and agents, (b) managed the

daily collection operations of Searay and Audubon, (c) oversaw the application of the collection

policies and procedures used by Searay and Audubon and/or their employees and agents, (d)

ratified the unlawful debt collection policies and procedures used by Searay and Audubon and/or

their employees and agents, and (e) had knowledge of, approved and ratified the unlawful debt

collection practices used by Searay and Audubon and/or their employees and agents in

connection with their efforts to collect an alleged debt from Mrs. Doxtater and others using the

unlawful debt collection practices that are described in this complaint.

24.     During all times pertinent hereto, Mr. Potter directly and indirectly participated in

the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are

described in this complaint.

25.     NCW Billing Inc. ("NCW") is a New York corporation, supposedly doing

business at 3719 Union Road, Suite 221, Cheektowaga, New York 14225.  NCW is owned,

managed and operated by defendant Gregory George Emminger.  Upon information and belief,

NCW also is owned, managed and operated by defendant Douglas J. MacKinnon.  According to

the NCW internet website (www.ncwbilling.com), "NCW Billing is a payment processing

company that provides payment processing services to collection agencies and collection law

firms and their clients & customers throughout the United States."  NCW uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

NCW regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another. NCW is a "debt collector" as the term is defined and used in the FDCPA. NCW is a "regulated person" as the term is defined and used in MCPA. Alternatively, NCW is a "collection agency" and "licensee" as the terms are defined and used in MOC.

26.    During all times pertinent hereto, NCW directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

27.    National Credit Works, Inc. ("National Credit Works") is a New York corporation, supposedly doing business at 3719 Union Road, Suite 221, Cheektowaga, New York 14225. National Credit Works is owned, managed and operated by defendant Gregory George Emminger. Upon information and belief, National Credit Works also is owned, managed and operated by defendant Douglas J. MacKinnon. National Credit Works and NCW Billing Inc. are commonly owned, operated and managed and operate from the same office space, and with the same staff, equipment and telephone lines. National Credit Works uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. National Credit Works regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. National Credit Works is a "debt collector" as the term is defined and used in the FDCPA. National Credit Works is a "regulated person" as the term is defined and used in MCPA. Alternatively, National Credit Works is a "collection agency" and "licensee" as the terms are defined and used in MOC.

28.    During all times pertinent hereto, National Credit Works directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs.

Doxtater that are described in this complaint.

29. National Credit Works II LLC ("NCW II") is a New York limited liability company, supposedly doing business at 3719 Union Road, Suite 221, Cheektowaga, New York 14225. NCW II is owned, managed and operated by defendant Gregory George Emminger. Upon information and belief, NCW II also is owned, managed and operated by defendant Douglas J. MacKinnon. NCW II, National Credit Works Inc. and NCW Billing Inc. are commonly owned, operated and managed and operate from the same office space, and with the same staff, equipment and telephone lines. NCW II uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NCW II regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NCW II is a "debt collector" as the term is defined and used in the FDCPA. NCW II is a "regulated person" as the term is defined and used in MCPA. Alternatively, NCW II is a "collection agency" and "licensee" as the terms are defined and used in MOC.

30. During all times pertinent hereto, NCW II directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

31. Defendant Gregory George Emminger is a natural person, residing at 1098 Bowen Drive East, North Tonawanda, New York 14120. Mr. Emminger is an owner of NCW, Inc., National Credit Works Inc. and National Credit Works II LLC. Mr. Emminger manages NCW, National Credit Works and NCW II. Mr. Emminger is an employee of NCW, National Credit Works and NCW II. Emminger uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Emminger regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Emminger is a "debt collector" as the term is defined and used in the FDCPA. Mr. Emminger is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Mr. Emminger is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

32. Upon information and belief, Mr. Emminger also is employed as a Vice President for First Niagara Bank and/or First Niagara Financial Group, Inc., 726 Exchange Street, Buffalo, New York 14210.

33. During all times pertinent hereto, Mr. Emminger (a) created the collection policies and procedures used by NCW, National Credit Works and NCW II, (b) managed the daily collection operations of NCW, National Credit Works and NCW II, (c) oversaw the application of the collection policies and procedures used by NCW, National Credit Works and NCW II and their employees and agents, (d) ratified the unlawful debt collection policies and procedures used by NCW, National Credit Works and NCW II and their employees and agents, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by NCW, National Credit Works and NCW II and their employees and agents, as well as the other entities, their employees and their agents, with whom NCW, National Credit Works and NCW II participated in efforts to collect the alleged debt from Mrs. Doxtater through the unlawful debt collection practices that are described in this complaint.

34. During all times pertinent hereto, Mr. Emminger directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

35.     On September 30, 2011, National Credit Works Inc. entered into a subscriber agreement with an entity named Vitelity Communications, LLC ("Vitelity"), for toll free telephone number, 888-447-2490.  National Credit Works remains the current subscriber to toll free number 888-447-2490.  According to Vitelity, the contact telephone number for National Credit Works is 716-512-1042, which is a number that belongs to and is answered by Gregory George Emminger.  Additional and related toll free telephone numbers provided by Vitelity to National Credit Works include the following:

(a)    855-238-2729 and 855-238-3328, which are forwarded to 716-650-0495, and which are answered as "All Debt Traders Portfolio Company", and which entity is managed by persons named Victor Battaglia and Darren Neaverth;

(b)    855-242-9670 and 855-826-7888, which are forwarded to 716-568-7617, and which are answered as "Client Services" of Enhanced Acquisitions LLC;

(c)    855-479-5470, 877-268-8350 and 888-715-4820, which are forwarded to 716-508-4563, and which used to be answered as NCW Billing Inc. and Northeast Credit Solutions Inc.;

(d)    855-558-3003, which is forwarded to 716-616-3627, and which is answered as "Delray Capital, LLC" and as "Client Services" of Enhanced Acquisitions LLC;

(e)    855-573-5080, which is forwarded to 716-568-7667;

(f)    866-269-9320, which is forwarded to 716-308-9650, and which used to be

answered as National Credit Works Inc.;

(g)     866-632-4060, 866-874-5190 and 888-638-1640, which are forwarded to 716-568-7308, which are answered as Elite Payment Solutions LLC at 501 John James Audubon Parkway, Suite 301, Amherst, New York 14228, and which is the office of Enhanced Acquisitions LLC;

(h)     877-300-7225, which is forwarded to 585-861-1573 and which is answered by a realtor named Kathleen "Katie" O'Brien, and who registered the internet domain name, www.resolutionmgmt.com, for an entity named Resolution Management, LLC;

(i)     877-576-2970, which is forwarded to 716-616-3629 and is answered as "Client Services" of Enhanced Acquisitions LLC;

(j)     888-338-1540, which is forwarded to 716-508-3546;

(k)     888-339-6065, which is forwarded to 716-677-4883;

(l)     888-348-7190, which is forwarded to 716-616-3617 and is answered as "Client Services" of Enhanced Acquisitions LLC;

(m)     888-447-2490 and 888-676-9505, which are forwarded to 716-616-3618 and are answered as "Client Services" of Enhanced Acquisitions LLC;

(n)     888-735-0750, which is forwarded to 716-240-2927, and is answered as Resolution Management, LLC, located at 160 Linden Oaks, Suite D-3, Rochester, New York 14625, and which is managed by a realtor named Kathleen "Katie" O'Brien.

(o)     888-754-9460, which is forwarded to 716-616-3628.

14

36.     Defendant Douglas J. MacKinnon is a natural person, residing at 6575 Meghan Rose Way, East Amherst, New York 14051. Upon information and belief, Mr. MacKinnon is an owner, officer, managing member, employee and/or agent of Searay, Audubon, WWA, RPG NCW, National Credit Works and NCW II. Mr. MacKinnon previously owned and operated a debt collection agency named Account Management Services, LLC, through which Mr. MacKinnon routinely and intentionally violated the FDCPA and numerous other laws and defrauded consumers, until the company was forced to close. Mr. MacKinnon uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. MacKinnon regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. MacKinnon is a "debt collector" as the term is defined and used in the FDCPA. Mr. MacKinnon is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Mr. MacKinnon is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

37.     During all times pertinent hereto, Douglas J. MacKinnon (a) created the collection policies and procedures used by Searay, Audubon, WWA, RPG NCW, National Credit Works and/or NCW II and their employees, (b) managed the daily collection operations of Searay, Audubon, WWA, RPG NCW, National Credit Works and/or NCW II, (c) oversaw the application of the collection policies and procedures used by Searay, Audubon, WWA, RPG NCW, National Credit Works and/or NCW II. and their employees, (d) ratified the unlawful debt collection policies and procedures used by Searay, Audubon, WWA, RPG NCW, National Credit Works and/or NCW II and their employees and agents, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by Searay, Audubon, WWA, RPG NCW,

National Credit Works and/or NCW II and their employees, as well as the other entities, their employees and their agents, with whom Searay, Audubon, WWA, RPG NCW, National Credit Works and NCW II placed Mrs. Doxtater's account for collection as described in this complaint.

38.     During all times pertinent hereto, Douglas J. MacKinnon directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mrs. Doxtater that are described in this complaint.

39.     David John Dwyer, Jr., Katelyn C. Stumpf, Tristan M. Potter, Gregory George Emminger and Douglas J. MacKinnon, and others, through various entities, including Searay, Audubon, WWA, RPG NCW, National Credit Works and NCW II, and others, have been and continue to be engaged in a fraudulent and criminal scheme and conspiracy to extort money from consumers in connection with efforts to collect money allegedly due on delinquent payday loans.

40.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

41.    In 2012, Mrs. Doxtater opened an account with The Cash Store and borrowed money by way of a payday loan.  The Cash Store designated the account as Account No. 9221097266.  Mrs. Doxtater used the borrowed money to obtain goods and/or services for personal, family or household purposes.  Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA, MCPA and MOC.

42.    Mrs. Doxtater had a dispute with The Cash Store regarding the alleged debt.

43.    Mrs. Doxtater disputed the alleged debt.

44.    Mrs. Doxtater refused to pay the alleged debt.

45.    The Cash Store charged off the account.

46.    In or about June of 2013,The Cash Store sold the charged-off account to an entity named United Debt Holding, LLC ("UDH").

47.    In August of 2014, UDH sold the account and related, alleged debt to defendant Audubon Holdings Group Inc.

48.    In or after August of 2014, Audubon placed the account and related, alleged debt for collection with defendant Walker, Williams & Associates, LLC.

49.    On September 4, 2014 at approximately 5:28 p.m., defendants' employee and/or agent placed a call from a blocked number to Mrs. Doxtater's cellular telephone and left the following message on Mrs. Doxtater's voicemail:  "This message is intended for Judy Doxtater. My name is Investigator Phillips.  I was hired on to have you served with a summons to appear in court.  Just giving you a courtesy call to let you know I'll be out to either your home or place of

employment within the next forty-eight hours to deliver you with these documents.  You need to be available with your state-issued photo ID as well as your social security card.  Now Judy, if you're not going to be available at either location, I highly recommend you contact the filing party today to reschedule.  Their direct number is 844-886-5592, Case No. 667182.  Judy Doxtater, you have officially been notified, and good luck!"

50.     On September 4, 2014 at approximately 5:32 p.m., defendants' employee and/or agent placed a second call from a blocked number to Mrs. Doxtater's cellular telephone and left the following message on Mrs. Doxtater's voicemail:  "This message is intended for Judy Doxtater.  My name is Investigator Phillips.  I was hired on to have you served with a summons to appear in court.  Giving you a courtesy call to let you know I'll be out to either your home address that we have on file here or place of employment within the next forty-eight hours to deliver you with these documents.  You need to be available with your state-issued photo ID as well as your social security card.  Now Judy, if you're not going to be available at either location tomorrow morning, I highly recommend you contact the filing party today to reschedule.  Their direct number is 844-886-5592, Case No. 667182.  Now Judy, I just have to let you know, each and every attempt I have to make in serving you with these documents, it is a seventy-five dollar court-mandated fee by county.  Alright?  So if you can get in contact with them as soon as possible, um, it does add up very quickly in these cases here.  You have officially been notified and good luck to you."

51.     On September 11, 2014 at approximately 1:04 p.m., defendants' employee and/or agent placed a call to Mrs. Doxtater's cellular telephone and used an artificial or prerecorded voice to leave the following message on Mrs. Doxtater's voicemail:  "This message is for Judy

Doxtater from the offices of Walker, Williams & Associates.  We are calling regarding your returned item from your bank that requires your immediate attention.  It would be in your best interest to try to have yourself or your counsel contact our office to discuss voluntary resolution of this matter.  You may contact us at 866-469-6866.  And when calling in, please refer to file number 667182.  Please be advised, this is not a solicitation and we will be expecting a response."  According to Ms. Doxtater's caller ID, the call originated from telephone number 716-402-1983.

     52.    On September 16, 2014, Mrs. Doxtater's husband, Steven Doxtater, responded to defendants' messages by placing a telephone call to 844-886-5592.  The call was answered by defendants' employee and/or agent, who identified himself as "Chris Singleton" at extension 301.  In the ensuing conversation, defendants' employee and/or agent made the following representations:

    a)    "Our client is The Cash Store."

    b)    Mrs. Doxtater's file is in "our Litigation Department."

    c)    Mrs. Doxtater borrowed money from The Cash Store on June 16, 2012, with an original account number of 9221097266, but failed to make payments after mid-October of 2012.

    d)    The Cash Store charged off the account on November 18, 2012, with an unpaid balance of $414.08.

    e)    Mrs. Doxtater owes a current account balance of $1,010.23, which includes interest that has accrued since the account was charged off on November 18, 2012, plus "a charge of $100.00 for coming into our

Litigation Department."

f)      Mrs. Doxtater can pay the debt by MasterCard or Visa, which will show up on her monthly bank statement as having been paid to "NCW Billing."

g)      I just spoke with our attorney and she stated that they will settle today for 40% of the balance, which is $410.95, or Mrs. Doxtater can settle by paying $610.00 on or before September 30, 2014, or by paying $750.00 with $375.00 to be paid on of before September 30, 2014 and the balance of $375.00 to be paid on or before October 31, 2014.

53.      On September 16, 2014, defendants emailed to Mrs. Doxtater a letter on the letterhead of "Walker, Williams & Associates," demanding payment of the alleged debt and offering three different payment options.  A copy of the letter is attached hereto as Exhibit A.

54.      On September 17, 2014, Mr. Doxtater placed a telephone call to 844-886-5592 and spoke with defendants' employee and/or agent, who identified himself as "Chris Singleton" at extension 301.  Mr. Doxtater stated that Mrs. Doxtater would not be making any payment to defendants because Mrs. Doxtater believed that the debt was already paid or otherwise settled. Defendants' employee and/or agent replied that defendants were going to file for a judgment against Mrs. Doxtater and then start the garnishment process, taking twenty-five percent of Mrs. Doxtater's wages.

55.      The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that a lawsuit had been filed against Mrs. Doxtater.

56.      The above-described messages and representations left and made by defendants

20

and their agents and/or employees falsely represented and falsely implied that a lawsuit would be filed against Mrs. Doxtater.

57.     The above-described messages and representations left and made by defendants and their agents and/or employees misrepresented and/or concealed the identity of the caller.

58.     The above-described messages and representations left and made by defendants and their agents and/or employees misrepresented the authority of the caller.

59.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that a law firm was involved in the efforts to collect the alleged debt.

60.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Mrs. Doxtater was about to be served with a summons and complaint at her home or place of employment.

61.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that each and every attempt made in serving the bogus summons and complaint on Mrs. Doxtater would result the addition to the alleged debt of "a seventy-five dollar court-mandated fee by county."

62.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that "our client is The Cash Store."

63.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Mrs. Doxtater's file was in defendants' "Litigation Department."

21

64.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that defendants have a "Legal Department."

65.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Mrs. Doxtater owed a current account balance on the account in the amount of $1,010.23.

66.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that defendants were allowed by law or contract to add to the account balance "a charge of $100.00 for coming into our Litigation Department."

67.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that defendants' employee and/or agent had just spoken with defendants' attorney (or any attorney, for that matter) regarding the terms of settlement offered by defendants' employee and/or agent.

68.     The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that defendants were going to file for a judgment against Mrs. Doxtater and then start the garnishment process, taking twenty-five percent of Mrs. Doxtater's wages.

69.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

70.     The FDCPA states that it is unlawful for a debt collector to use criminal means

to harm the reputation of any person.  15 U.S.C. § 1692d(1).

71.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

72.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

73.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

74.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

75.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

76.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

77.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

78.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

79.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

80.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

81.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

82.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

83.     Defendants have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(B), (10), (11), (13) and (14), and 1692f.

84.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

85.     Defendants failed to provide Mrs. Doxtater with the information they were required to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

86.     An entity that itself meets the definition of debt collector is liable for the unlawful

collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

87.    Defendants, along with other individuals and other corporate entities to be disclosed and identified in discovery, have created, organized, led, managed and/or actively participated in a criminal organization and scheme, through which they directly and indirectly conspired to purchase and collect delinquent payday loans, using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Michigan law), and that included the use of scripted threats of faked litigation and extortion.  These defendants have used the same script and same unlawful, criminal tactics, to attempt to collect alleged debts from more than one thousand persons.  Defendants' criminal enterprise remains active and ongoing.

88.    Each and every defendant had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

89.    Each and every defendant has benefitted financially from the use of the unlawful debt collection practices that are described in this complaint.

90.    Each and every defendant has intentionally and wilfully violated the FDCPA, MCPA and MOC.

91.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

92.    Defendants, to increase their business and profits, have knowingly chosen to use

25

debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

93.     As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, physical illness and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.     Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

94.     Plaintiff incorporates the foregoing paragraphs by reference.

95.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

96.      Plaintiff incorporates the foregoing paragraphs by reference.

97.      Each defendant has violated the MCPA. Each defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

27

f)  Defendants violated M.C.L. § 445.252(m) by bringing to public notice that the consumer is a debtor;

g)  Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt;

h)  Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee; and

i)  Defendants violated M.C.L. § 445.258.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)  Actual damages pursuant to M.C.L. § 445.257(2);

b)  Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)  Statutory damages pursuant to M.C.L. § 445.257(2);

d)  Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)  Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

98.  Plaintiff incorporates the foregoing paragraphs by reference.

99.  Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)  Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)  Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)  Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the

28

purpose of a communication when it is made in connection with collecting a debt;

d) Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e) Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f) Defendants violated M.C.L. § 339.915(m) by bringing to public notice that the consumer is a debtor;

g) Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

h) Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee;

i) Defendants violated M.C.L. § 339.918; and

j) Defendants violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a) Actual damages pursuant to M.C.L. § 339.916;

b) Treble the actual damages pursuant to M.C.L. § 339.916;

c) Statutory damages pursuant to M.C.L. § 339.916;

d) Equitable relief pursuant to M.C.L. § 339.916; and

e) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: October 27, 2014

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com